UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
BORUCH TEITELBAUM, individually and on
behalf of all others similarly situated,

                            Plaintiff,                    **MEMORANDUM & ORDER**
                                                    20-CV-3272 (PKC) (LB)

                 - against -

I.C. SYSTEM, INC., and JOHN DOES 1–25,

                        Defendants.
---------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      In June 2020, Defendant I.C. System, Inc. ("ICS"), a debt collector, sent Plaintiff Boruch

Teitelbaum a collection letter regarding a debt owed on his account with a utility company. The

letter told Plaintiff: "The account information is scheduled to be reported to the national credit

reporting agencies in your creditor's name. . . . [ICS] will not submit the account information to

the national credit reporting agencies until the expiration of the time period described in the notice

below." Asserting that this information is misleading, Plaintiff filed a class-action complaint

against ICS and unnamed John Does under the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.* ICS now moves to dismiss the Complaint for failure to state a claim pursuant

to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court

grants the motion.

**BACKGROUND**

      The Complaint alleges the following facts, which the Court accepts as true for purposes of

Defendant ICS's motion and construes in the light most favorable to Plaintiff, the nonmoving

party. *See Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013).

1

Some time prior to June 23, 2020, Plaintiff incurred a debt to New York State Electric & Gas Corporation ("NYSEG") for electric and gas services.  (Complaint ("Compl."), Dkt. 1, ¶¶ 21–22.)  NYSEG contracted with Defendant ICS to collect this debt, and on or around June 23, 2020, ICS sent Plaintiff a collection letter.  (*Id.* ¶¶ 25, 27.)  This letter, a copy of which is attached to the Complaint, states in relevant part:

> This letter is being sent to advise you about an important notice regarding your [NYSEG] account.  [NYSEG] is both the original and current creditor to whom this debt is owed.  Please see below.
>
> The account information is scheduled to be reported to the national credit reporting agencies in your creditor's name.  You have the right to inspect your credit file in accordance with federal law.  [ICS] will not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below.[1]

(Compl. Ex. A, Dkt. 1-1.)

Plaintiff asserts that ICS's letter, particularly the combination of the first and last sentences of the second paragraph above, "implies that Defendant ICS will be reporting to the credit reporting agencies after the expiration of the time period in addition to the original creditor submitting as well." (*See* Compl., Dkt. 1, ¶¶ 29–32.)  Accordingly, Plaintiff alleges that the letter misleadingly

---

[1]  The notice provided "below" in the letter states:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Compl. Ex. A, Dkt. 1-1.)  This part of the letter is not at issue.  (*See generally* Compl., Dkt. 1, ¶¶ 27–38.)

represents that "two companies will report the same debt to the credit reporting agencies at the same time," *i.e.*, that the same debt would be reported twice. (*See id.* ¶¶ 34–37.)

On July 21, 2020, Plaintiff brought suit individually and on behalf of a putative class against ICS, alleging a single violation of the FDCPA under 15 U.S.C. § 1692e. (*Id.* ¶¶ 39–43.) On September 21, 2020, ICS moved for a pre-motion conference to discuss a proposed motion to dismiss. (*See* Defendant's Motion for Pre-Motion Conference ("Def.'s Mot."), Dkt. 15.) Plaintiff responded. (*See* Plaintiff's Opposition to Motion for Pre-Motion Conference ("Pl.'s Opp."), Dkt. 17.) By order dated October 9, 2020, the Court construed ICS's motion for a pre-motion conference as a motion to dismiss and directed the parties to file supplemental letter briefs. (10/9/2020 Docket Order.) Following supplemental letter briefing (*see* Dkts. 18–20), the Court took the motion under submission.

## DISCUSSION

### I.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Making this determination is "a context-specific task" that requires the Court "to draw upon its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although the Court accepts as true all factual allegations contained in a plaintiff's complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *accord Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Additionally, "a court need

not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (collecting cases).

## II.      Plaintiff's Complaint Does Not Plausibly State a Violation of the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).  "These purposes inform the FDCPA's many provisions." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008).  One of those provisions—the one that Plaintiff specifically alleges Defendant ICS violated—forbids a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  A representation is "false, deceptive, or misleading" under § 1692e if, from the perspective of the "objective 'least sophisticated consumer,'" the representation is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (per curiam) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

The least-sophisticated-consumer standard is an objective one that is forgiving, but not toothless.  "[I]n crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon*, 988 F.2d at 1319; *see also Jacobson*, 516 F.3d at 90 ("[I]n addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications.").  Thus, the perspective of the least sophisticated consumer "does not extend to

every bizarre or idiosyncratic interpretation of a collection notice." *Easterling*, 692 F.3d at 233–34 (quoting *Clomon*, 988 F.2d at 1319).  Put differently, the least sophisticated consumer "does not have the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (internal quotation marks and citation omitted).  "[E]ven the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quoting *Clomon*, 988 F.2d at 1319). In evaluating the § 1692e violation alleged here, the Court's inquiry under the least-sophisticated-consumer standard is whether such a consumer "could reasonably interpret the representation in a way that is inaccurate." *See Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (internal quotation marks and citation omitted).  "[T]he trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss." *Diaz v. Residential Credit Sols., Inc.*, 965 F. Supp. 2d 249, 256 (E.D.N.Y. 2013) (quoting *Rozier v. Fin. Recovery Sys.*, No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116, at *2 (E.D.N.Y. June 7, 2011)).

The only representation in ICS's collection letter that Plaintiff alleges is deceptive or misleading is the following: "The account information is scheduled to be reported to the national credit reporting agencies in your creditor's name. . . . [ICS] will not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below." (*See* Compl., Dkt. 1, ¶¶ 27–38.)  Plaintiff contends, based on these sentences, that the collection letter inaccurately represents that both NYSEG and ICS will be

5

reporting the same debt to the credit bureaus.  (*See id.*; *see also* Plaintiff's Supplemental

Opposition ("Pl.'s Supp."), Dkt. 19, at 2.)[2]

The Court finds Plaintiff's proposed interpretation of the collection letter tortured and

"idiosyncratic," one that even the most naïve and unsophisticated consumer could not reasonably

reach.  *See Easterling*, 692 F.3d at 233–34; *Clomon*, 988 F.2d at 1319.  The letter does not state

that NYSEG will be reporting any debt or account information to the credit reporting agencies.

(*See* Compl. Ex. A, Dkt. 1-1.)  Rather, the plain language of the letter makes clear that ICS, and

not the creditor NYSEG, will be reporting the relevant information: it states that "[t]he account

information is scheduled to be reported to the national credit reporting agencies *in your creditor's*

*name*," and then, in the same paragraph, makes clear that "[*ICS*] will not submit the account

information to the national credit reporting agencies until the expiration of the time period

described in the notice below."[3]  (*See id.* (emphases added).)

Plaintiff focuses on the statement that "[t]he account information is scheduled to be

reported to the national credit reporting agencies in your creditor's name," and argues that the

unsophisticated consumer could reasonably interpret this statement to say that NYSEG will report

the account, given the phrase "in your creditor's name," and the fact that the letter identifies the

---

[2]  Plaintiff does *not* dispute that ICS has the right to report debts that it is collecting to the credit rating agencies.  (*See* Pl.'s Supp., Dkt. 19, at 5 ("Plaintiff does not quibble with the general proposition that debt collectors have the right to credit report.").)

[3]  As discussed above, the entire paragraph reads:

> The account information is scheduled to be reported to the national credit reporting agencies in your creditor's name.  You have the right to inspect your credit file in accordance with federal law.  [ICS] will not submit the account information to the national credit reporting agencies until the expiration of the time period described in the notice below.

(Compl. Ex. A, Dkt. 1-1.)

creditor as NYSEG multiple times.  (*See* Pl.'s Opp., Dkt. 17, at 2; Pl.'s Supp., Dkt. 19, at 4.)  But

Plaintiff's argument reads into the statement something that it does not say, and ignores that two

sentences later, in the same paragraph, the letter explicitly identifies ICS as the entity that will be

submitting "the account information" to the national credit reporting agencies.  (*See* Compl. Ex.

A, Dkt. 1-1.)  Even the least sophisticated consumer is deemed to be willing and able to read a

collection letter in its entirety and with some care.  *See Greco*, 412 F.3d 363 (quoting *Clomon*, 988

F.2d at 1319); *see also Weinberg v. CKS Fin., LLC*, No. 19-CV-2666 (LDH) (RML), 2020 WL

5369058, at *2 (E.D.N.Y. Sept. 8, 2020) ("[A] debt-collection letter should be read 'as a whole'

to determine whether it is 'reasonably susceptible to misinterpretation or likely to cause a debtor

to misunderstand his rights.'" (quoting *Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs.,

Inc.*, 59 F. App'x 406, 409 (2d Cir. 2003) (summary order))).  The least sophisticated consumer,

moreover, is not a "dolt"—or, for that matter, a "Philadelphia lawyer."  *Ellis*, 591 F.3d at 135.

Such a consumer, therefore, would not read something into a statement that it does not say, while

ignoring a related sentence in the same paragraph that makes clear who will be reporting "the

account information" to the credit rating agencies.  *Cf. Hanks v. Shafer Law Firm, PC*, No. 19-

CV-428, 2019 WL 6834319, at *3–4 (E.D. Va. Nov. 19, 2019) (noting that under the least-

sophisticated-consumer standard, a collection notice "must be examined as a whole, not sentence

by sentence," and rejecting an interpretation that was based on "a misreading of the text" and

"unsupported supposition" (internal quotation marks and citation omitted)), *report and

recommendation adopted*, 2019 WL 6834312, at *1 (E.D. Va. Dec. 13, 2019).

     Plaintiff's reliance on *Knight v. Midland Credit Management Inc.*, 755 F. App'x 170 (3d

Cir. 2018), is unavailing.  (*See* Pl.'s Opp., Dkt. 17, at 2–3; Pl.'s Supp., Dkt. 19, at 3.)  In that case,

the debt collector sent the plaintiff a collection letter offering several settlement options, which

included a note at the bottom that simply said, "*If you pay your full balance, we will report your

account as **Paid in Full**.  If you pay less than your full balance, we will report your account as

**Paid in Full for less than the full balance**." *Knight*, 755 F. App'x at 172–73 (bolding in original).

The plaintiff in *Knight* argued that the letter's use of the term "report" was false, deceptive, and

misleading under the FDCPA because it "could be reasonably interpreted by the least sophisticated

debtor to mean [the debt collector] would report the payment to the credit reporting agencies, the

original creditor, or both." *Id.* at 175.  The Third Circuit agreed, concluding that "[w]ithout any

other defining or clarifying language as to whom [the debt collector] will report a debtor's

payment, the least sophisticated debtor could reasonably believe that [the debt collector] would

report the payment to the debtor's original creditor, the credit reporting agencies, or both." *Id.*

The collection letter here, however, is not "without any other defining or clarifying language." *Cf.*

*id.*  Indeed, as discussed, ICS's collection letter states that "[t]he account information is scheduled

to be reported to the national credit reporting agencies in your creditor's name," and then goes on

in the same paragraph to make clear that "[ICS] will not submit the account information to the

national credit reporting agencies" until after the 30-day validation period.  (*See* Compl. Ex. A,

Dkt. 1-1.)  *Knight*, therefore, is inapposite.

Plaintiff's citation to cases in the debt validation context is equally inapposite and

unavailing.  (*See* Pl.'s Supp., Dkt. 19, at 3–4.)  Those cases involved collection letters that failed

to identify the person or entity that would assume the debt to be valid in the absence of a validation

request, and therefore failed to sufficiently inform the least sophisticated consumer of their debt-

validation rights.[4]  *See Philip v. Sardo & Batista, P.C.*, No. 11-CV-4773 (SRC), 2011 WL

---

[4]  Section 1692g(a) requires a debt collector to send the consumer a detailed validation
notice that contains, among other things, "a statement that unless the consumer, within thirty days
after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be

5513201, at *4–5 (D.N.J. Nov. 10, 2011); *Galuska v. Collectors Training Inst. of Ill., Inc.*, No. 07-CV-2044, 2008 WL 2050809, at *4–6 (M.D. Pa. May 13, 2008); *Smith v. Hecker*, No. 04-CV-5820, 2005 WL 894812, at *5–6 (E.D. Pa. Apr. 18, 2005). Plaintiff, however, makes no allegation that ICS's letter fails to comply with the FDCPA's debt validation requirements.

In short, "only a consumer in search of ambiguity, and not the least sophisticated consumer relevant here," would interpret ICS's collection letter in the idiosyncratic and illogical way Plaintiff posits. *See Donaeva v. Client Servs., Inc.*, No. 18-CV-6595 (BMC), 2019 WL 3067108, at *4 (E.D.N.Y. July 12, 2019) (alteration omitted) (quoting *Taylor v. Fin. Recovery Servs., Inc.*, 252 F. Supp. 3d 344, 352 (S.D.N.Y. 2017)). "Indeed, a lawyer in search of ambiguity is even more likely than a consumer in search of ambiguity to find fault with this entirely accurate and innocuous debt collection letter[.]" *See id.* (citation omitted). Assuming that the collection letter is read as a whole and with some care, even the least sophisticated consumer could not reasonably interpret it to say that both NYSEG and ICS will be reporting the consumer's "account information" to the credit reporting agencies or that the debt will be reported twice to these agencies.[5] Accordingly,

---

assumed to be valid *by the debt collector*." 15 U.S.C. § 1692g(a)(3) (emphasis added). The Complaint, which alleges a single violation of the FDCPA under § 1692e, does not allege a violation of § 1692g. (*See* Compl., Dkt. 1, ¶¶ 39–43.)

[5] Although there is no occasion to reach the issue, the Court notes that even if the collection letter here could reasonably be read to say that both NYSEG and ICS will be reporting to the credit rating agencies, the Complaint does not sufficiently allege that such a statement is materially false, deceptive, or misleading. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (holding that "statements must be materially false or misleading to be actionable under the FDCPA"). The Complaint asserts that "[i]t is deceptive and harassing to state that two companies will report the same debt to the credit rating agencies at the same time." (Compl., Dkt. 1, ¶ 34.) But as a general matter, "debt collectors do not violate the FDCPA when they report a debt, even if another entity has already made a credit bureau report about the same debt." *Reyes v. IC Sys., Inc.*, 470 F. Supp. 3d 190, 193 (D. Conn. 2020) (quoting *Macias v. Credit Control, LLC*, No. 17-CV-1158, 2017 WL 2619145, at *3 (N.D. Ill. June 16, 2017), and collecting other cases). Moreover, "[t]hreats to do what one may properly do are not ordinarily deemed improper or actionable." *Fashakin v. Nextel Commc'ns*, No. 05-CV-3080 (RRM), 2009 WL 790350, at *9 (E.D.N.Y. Mar. 25, 2009) (quoting *Sluys v. Hand*, 831 F. Supp. 321, 327 (S.D.N.Y. 1993)).

the Complaint fails to state a plausible violation of the FDCPA under 15 U.S.C. § 1692e, and is

dismissed with prejudice.

## CONCLUSION

The motion to dismiss is granted, and the Complaint is dismissed.  The Clerk of Court is

respectfully directed to enter judgment in favor of all Defendants and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 1, 2021
        Brooklyn, New York

---

Plaintiff cites a string of cases in an attempt to establish that a debt collector may not tell a consumer that it will report a debt simultaneously with the original creditor.  (*See* Pl.'s Supp., Dkt. 19, at 5–6.)  But the cases cited by Plaintiff merely stand for the proposition that a debt collector may not *inaccurately* report a debt that is also being reported by the creditor—such as reporting under a separate account number—so as to make the same debt appear as two separate debts. *See Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004); *see also Reyes*, 470 F. Supp. 3d at 193–94; *Cook v. Mountain Am. Fed. Credit Union*, No. 18-CV-1548 (HRH), 2018 WL 3707922, at *4 (D. Ariz. Aug. 3, 2018); *Gustafson v. Experian Info. Sols. Inc.*, No. 14-CV-1453 (ODW), 2014 WL 2115210, at *4 (C.D. Cal. May 21, 2014).  There is no plausible allegation here that ICS inaccurately reported Plaintiff's debt, such that it would appear as two separate debts to the credit rating agencies, or that the collection letter would give any consumer such an impression.